IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:14-CR-268-FL

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>ANDREW J. ITTENBACH, )<br>)<br>Defendant. ) | ORDER |

This matter is before the court on defendant's motion to suppress evidence obtained in violation of the Fourth Amendment. (DE 22). The court conducted an evidentiary hearing on April 15, 2015, and defendant filed supplemental briefing. Pursuant to 28 U.S.C. § 636(b)(1)(B), United States Magistrate Judge James E. Gates entered a memorandum and recommendation ("M&R") (DE 34), wherein it is recommended that defendant's motion be denied. Defendant timely filed objections to the M&R, and the government's time for response has expired. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court adopts the recommendation of the magistrate judge, and defendant's motion is denied.

### STATEMENT OF THE CASE

On November 6, 2014, defendant was charged by criminal complaint with possession of firearms and ammunition by a convicted felon. On November 12, 2014, a grand jury returned a two-count indictment charging defendant with two counts of possession of firearms and ammunition by a convicted felon, both violations of 18 U.S.C.§§ 922(g)(1) and 924(a)(2). After a period of discovery, defendant filed the instant motion to suppress on February 13, 2015.

Defendant asserts that the government violated the Fourth Amendment when the North Carolina Highway Patrol ("Highway Patrol") stopped the vehicle in which he was riding on November 4, 2014, upon direction of the Federal Bureau of Investigations ("FBI"). Defendant contests the legality of the stop. In particular, defendant contends the FBI did not have sufficient probable cause to justify directing the Highway Patrol to conduct the stop, and in any event, that the FBI did not direct the Highway Patrol officers in carrying out the subsequent vehicle search, therefore rendering probable cause unimputable to those officers under the collective knowledge doctrine. Defendant also argues that probable cause did not exist independently of the FBI investigation, and that the Highway Patrol stop unconstitutionally extended beyond what was necessary to issue the driver a ticket. Accordingly, defendant seeks suppression of all evidence obtained during the stop. Finally, defendant contends that his subsequent consent to a search of his home, the weapons seized during that search, as well as all statements made after his arrest, also should be excluded as fruit of the poisonous tree, resulting from the unlawful stop.[1]

In response, the government argues probable cause existed at all times during the Highway Patrol's stop on two grounds. First, the government contends that the FBI had probable cause to seize defendant, which was attributable to the Highway Patrol officers who carried out the stop under the collective knowledge doctrine. Second, the government argues that, notwithstanding the collective knowledge doctrine, the Highway Patrol had an independent traffic law enforcement reason to initiate the stop, and subsequently had consent and independent probable cause to seize the occupants of the vehicle and conduct a search.

---

[1] Defendant previously raised the argument that the consent to search his home was further invalidated by coercion from law enforcement officers, playing off defendant's fear for the safety of his pets. Defendant does not raise any objection to the magistrate judge's recommendation that defendant's coercion argument is without merit, however, and the court therefore adopts the magistrate judge's reasoning on this point without further discussion.

2

An evidentiary hearing subsequently was conducted before the magistrate judge on April 15, 2015, and the parties were invited to file supplemental memorandum. Defendant filed supplemental memorandum on May 8, 2015. On August 3, 2015, the magistrate judge recommended to this court that defendant's motion to suppress be denied, because the FBI had probable cause, and application of the collective knowledge doctrine allowed that probable cause to be attributed to the Highway Patrol. Defendant's objections followed.

**FACTUAL BACKGROUND**

The facts outlined in the M&R are incorporated by reference. In addition, the court summarizes the following facts pertinent to the instant decision. The FBI initiated an investigation of defendant in April 2014, after a confidential informant ("the informant"), the organizer of the "North Carolina Ghost Militia," a right-wing military extremist Facebook group, provided FBI Special Agent Craig Noyes ("Agent Noyes") with direct access to both public and private messages exchanged between the informant and Facebook user, "Andrew Jayson Shytle-Ittenbach." (Gov. Ex. 1, DE 30-1). In addition, the informant provided Agent Noyes with the substance of text messages, phone calls, and face to face interactions with defendant. Defendant and the informant repeatedly engaged in conversations pertaining to weapons, and defendant implied that he was both a felon and currently the owner of firearms. Various messages were exchanged between the defendant and the informant where defendant discussed his "Bushmaster C15 (M4 variant)," the modifications he had made to it, the weapon's handling and firing capabilities, and the name he had given it, "Sura." (Tr. 15:17 to 18:2). As a result of these conversations, Agent Noyes conducted a criminal records search for "Andrew Jayson Shytle-Ittenbach," which disclosed that defendant was a convicted felon, prohibited from owning firearms. Details of defendant's criminal record matched

3

details relayed by the Facebook user. (Tr. 16:25 to 17:15).

On October 27, 2014, defendant invited the informant to travel with him to the "Million Mask March," an event sponsored by the anti-government computer hacker group "Anonymous" to be held on November 5, 2014 in Washington, D.C. In a recorded phone conversation on November 2, 2014, defendant insinuated that he would be going armed to the event, as he was "fully equipped" and "going prepared for whatever might happen." (Tr. 21:15-24; 25:7-15). In subsequent messages, the informant asked defendant specific questions about "Sura," defendant's weapon, and received affirmative responses that "Sura" would be traveling with defendant. (Gov. Ex. 2). As defendant and the informant worked out the details of the travel, defendant asked the informant to meet him and transport his firearm, as "Uncle don't like me & we cant be seen together." (Gov. Ex. 2 at 2). The informant made plans to meet with defendant in a specific parking lot behind a restaurant in Rocky Mount, North Carolina on November 4, 2014, to transfer the weapon to the informant's vehicle, before heading to the event. These messages all were provided to Agent Noyes.

On November 3, 2014, Agent Noyes met with Highway Patrol Trooper Jack Clark ("Trooper Clark"), an officer assigned to an FBI task force, to communicate the information provided by the informant and discuss a course of action. Trooper Clark coordinated a Highway Patrol plan to stop defendant en route to Washington, D.C., under the guise of a traffic stop in order to protect the confidential informant's identity. On November 4, 2015, defendant's proposed day of travel, Agent Noyes and United States Secret Service Special Agent Craig Korcz ("Agent Korcz")[2] conducted surveillance of defendant's residence. Either Agent Noyes or Agent Korcz drove by defendant's

---

[2] Agent Korcz was brought in to determine whether defendant posed a threat to the President of the United States, or another United States Protectee or Official.

residence approximately once per hour. Throughout the day, Agent Noyes communicated with the informant, who relayed up-to-date information on the status of the travel plans, which Agent Noyes then shared with the Highway Patrol. At approximately 1:50 p.m., Agent Korcz observed defendant leave his neighborhood driving his own vehicle. Defendant texted the informant that he was meeting a friend to ride in the friend's burgundy Grand Marquis, and the informant relayed the information to Agent Noyes. Agent Noyes further learned from the informant the approximate time and location where the informant was to meet defendant and receive defendant's firearm for transport. Agent Noyes subsequently witnessed defendant arrive at the location in the described Grand Marquis. After defendant arrived, however, Agent Noyes instructed the informant to avoid the location, and to instruct defendant instead to continue on to the hotel in Virginia, where the group planned to stay that evening. When the Grand Marquis departed, Agent Noyes informed Trooper Clark of the direction of defendant's travel. Trooper Clark and Trooper John Lamm ("Trooper Lamm") initiated pursuit. When they witnessed the vehicle follow too closely behind another vehicle, they initiated a traffic stop.

During the course of the stop, defendant was seized, and the rifle and the ammunition named in the indictment were found in the trunk of vehicle.[3] After defendant was taken into custody, he was provided <u>Miranda</u> warnings and interviewed separately from the driver of the vehicle. Defendant chose to waive his rights and to be interviewed without an attorney present. Defendant admitted that he had enlisted a friend to purchase the weapon and ammunition for him, and informed officers of the location of another weapon, a shotgun, and more ammunition within his home.

---

[3] Because the court, for the reasons provided herein, finds that probable cause existed to seize defendant and search the vehicle in which he was riding prior to the traffic stop, the court does not summarize further the occurrences of the traffic stop. These events are explained adequately within the M&R.

5

Defendant gave consent to search his home for these items, which were located consistent with defendant's description.

**COURT'S DISCUSSION**

A.  Standard of Review

The district court reviews de novo those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

B.  Analysis

Defendant raises five objections to the M&R, attacking the existence of probable cause at all stages of the traffic stop. First, with respect to the FBI investigation leading up to the November 4, 2014, traffic stop, defendant argues the collective knowledge doctrine is inapplicable for two reasons: 1) that the FBI did not have probable cause, and 2) in any event, that probable cause was not imputable to the searching officers. Second, with respect to the traffic stop, defendant argues that the driver's consent to extending the traffic stop does not apply to him as a passenger, and therefore, he was seized unlawfully once the business of the traffic stop was concluded. Third, defendant contends the magistrate judge failed to consider United States v. Rodriguez, ___U.S.___, 135 S. Ct. 1609 (2015), when assessing the legality of extending the traffic stop for a non-consensual

6

dog sniff of the vehicle.[4]  Fourth, defendant argues that the magistrate judge's recommendation that there was an independent basis to search the vehicle after the traffic stop concluded was flawed in light of the facts on the record.  Fifth, defendant contends that his post-arrest consent to search is tainted by the illegal seizure of his person during the traffic stop, and evidence obtained as a result of the search should be suppressed as fruit of the poisonous tree.  The court finds defendant's first objection without merit and denies the motion to suppress on that ground.  Accordingly, the court need not reach defendant's remaining objections.

      1.      The Collective Knowledge Doctrine

Defendant argues that the Highway Patrol violated his Fourth Amendment rights by seizing him and searching the vehicle in which he was a passenger without probable cause.  The Fourth Amendment provides that "[t]he right of the people to be secure . . . against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, and particularly describing the place to be searched, and the persons or things to be seized."  The Fourth Amendment expresses a "strong preference for warrants," United States v. Leon, 468 U.S. 897, 913-14 (1984), but a "warrantless search of an automobile is not unreasonable." United States v. Ross, 456 U.S. 798, 807 (1982).  "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."  Ross, 456 U.S. at 825.

"The law enforcement interests promoted by allowing one department to make investigatory stops based upon another department's bulletins or flyers are considerable."  United States v. Hensley, 469 U.S. 221, 232 (1985).  The collective knowledge rule allows officers to "act[] on the

---

[4] For the reasons noted herein, the court does not reach the merits of this contention, and therefore does not elaborate on the circumstances surrounding the dog sniff and subsequent search of the vehicle.

information and instructions of other officers." United States v. Massenberg, 654 F.3d 480, 492 (4th Cir. 2011). "[W]hen a group of agents in close communication with one another determines that it is proper to arrest an individual, the knowledge of the group that made the decision may be considered in determining probable cause, not just the knowledge of the individual officer who physically effected the arrest." United States v. Laughman, 618 F.2d 1067, 1072, n. 3 (4th Cir. 1980).

### A. FBI Probable Cause

Based on all of the evidence in the record, the FBI had probable cause to stop and seize defendant on November 4, 2014. Probable cause to search exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." Ornelas v. U.S., 517 U.S. 690, 696 (1996). Courts look to the totality of the circumstances, to assess whether "there [was] a fair probability that contraband or evidence of a crime [would] be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). When probable cause is based on an informant's tip, the court specifically takes into account the informant's veracity, reliability, and basis of knowledge. See id. at 230. Corroboration by independent police work and the predictive nature of the information relayed by the informant tend to make the informant appear more truthful and the information more reliable. Id. at 241, 245. When an informant provides correct, predictive information about aspects of a defendant's conduct, the court may conclude the informant is "more probably right about other facts," including the defendant's illegal activity. Id. at 244. Further, a court reviewing for probable cause will look more favorably upon information provided by a known informant compared to an anonymous tipster, because the known informant may be held accountable for false information. See Adams v.

Williams, 407 U.S. 143, 146-47 (1972).

In this case, Agent Noyes worked with a known informant, who provided not only predictive information about defendant, but also copies of the messages, sent from a Facebook user whose username corresponded with defendant's name, that formed the basis of the informant's knowledge. Agent Noyes began investigating defendant in April 2014, and continued to receive information from the informant until defendant's arrest on November 4, 2014.

Agent Noyes testified that he maintains a source, "Quantrill's Raiders," also known as "Green Eggs," that operates a militia extremist web page called "North Carolina Ghost Militia," through which the source communicates with people interested in "right wing militia-related" ideology. (Tr. 8:16-9:24). Defendant publicly posted on the informant's page, and privately corresponded with the informant. An individual, believed by Agent Noyes to be the defendant, communicated from a Facebook account under the name "Andrew Jayson Shytle-Ittenbach," and in one message claimed, "I quit using aliases and instead announce my affiliation un-anonymously because we can't ALL be faceless." (Tr. 13:14-19, 14:8-10, Gov. Ex. 1 at 1).

Messages indicated "Andrew Jayson Shytle-Ittenbach" owned at least one firearm, a "Bushmaster C-15 (M4 variant) & modified personally," (Tr. 15:17-18, Gov. Ex. 1 at 3) despite being a convicted felon. (Tr. 16:9-11, Gov. Ex. 1 at 3) ("[M]y gun rights ARE my natural rights, but according to the state (due to past 'transgression') I don't have any such right"). In one message, "Andrew Jayson Shytle-Ittenbach" referenced the "M4," by stating that he was getting a "forearm pistol grip," and that the weapon's name was "Sura." (Tr. 17:23-25, Gov. Ex. 1 at 4). Via Facebook, defendant also indicated that he used the weapon. (Tr. 19:17-21, Gov. Ex. 1 at 6). Although Agent Noyes never saw the weapon, he was able to infer, through the course of a recorded

9

phone conversation between the informant and defendant, as well as the Facebook messages and subsequent text messages, that defendant would be traveling armed to Washington, D.C. on November 4th. (Tr. 21:13-20). The information contained within the purported text messages from defendant referred again to defendant carrying weapons. (Tr. 25:18-20, Gov. Ex. 2 at 2) ("We are taking tools"), and, in response to an inquiry from the informant as to whether "Sura" would be in attendance, defendant replied that "she [would] be along." (Tr. 27:2-7, Gov. Ex. 2 at 2).

On November 4, 2014, the informant continued forwarding Agent Noyes many text messages sent to him by defendant, which Agent Noyes then relayed to Trooper Clark. (Tr. 36:21-25 to 37:1-5). These messages included the "Sura" text message, which again confirmed defendant was traveling armed. (Tr. 55:1-10).[5] At one point, the informant sent defendant a message telling defendant to make sure "Sura" was in a bag or case to avoid attracting attention, and defendant responded "Of course." (Tr. 37:12-24, Gov. Ex. 2 at 3). Other text messages and phone conversations relayed to Agent Noyes by the informant accurately predicted defendant's course of travel (Tr. 35:17-23, Gov. Ex. 2 at 3), and Agent Noyes visually confirmed a vehicle matching the description given by the informant arrive at the meeting destination at the approximate time, thereby confirming the informant's information before relaying it to Trooper Clark. (Tr. 39:17-24). The informant was in real-time communication with Agent Noyes, and was able to provide updates to officers so that the final plan, as relayed by the informant to Agent Noyes, matched the actual circumstances of defendant's arrival at the meeting point.

---

[5] Defense counsel notes some confusion as to when Agent Noyes received the information contained within the text messages, and when he received a physical copy of the messages. Agent Noyes testifies that he had the substance of relevant text messages when communicating with State Highway Patrol prior to the stop of defendant, even though he did not receive the screenshots of the informant's communication with defendant until a later date. Agent Noyes has testified that his source "straight forward[ed]" defendant's messages as they were received by the informant, rather than immediately sending a screenshot to Agent Noyes on all occasions.

Case 5:14-cr-00268-FL   Document 38   Filed 10/26/15   Page 10 of 14

Nevertheless, defendant argues that the informant is unreliable, where the defendant's purported responses were vague and the informant did not provide the officers with all messages. Probable cause does not require evidence beyond a reasonable doubt, however, nor, is the standard comparable to the standard of proof by a preponderance of the evidence. See Ornelas, 517 U.S. at 696. The government has demonstrated, through sufficient production of the messages relayed by the informant and officer testimony that Agent Noyes confirmed the informant's information, that there was a fair probability that defendant, a convicted felon, would be in possession of a firearm in the vehicle stopped on November 4, 2014.

Defendant also argues that the court should find the federal agents lacked probable cause because Agent Korcz's notes indicate no visual confirmation of a firearm prior to the stop, Agent Korcz characterized Agent Noyes's information as "inferences," and Agent Noyes, at the detention hearing, stated that the Highway Patrol's search of the vehicle resulted from facts the searching officers learned during the stop. The subjective opinion of Agent Korcz, and even the statements after the fact of Agent Noyes at the detention hearing, however, are irrelevant to this court's review for probable cause. "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." Whren v. United States., 517 U.S. 806, 813 (1996).

Finally, defendant's contention that the Highway Patrol's plan to create a ruse was inconsistent with a belief in probable cause also is of no consequence. See generally Florida v. Royer, 460 U.S. 491, 507 (1983) (plurality opinion); United States v. Williams, 627 F.3d 247, 253-54 (7th Cir. 2010) ("the application of the collective knowledge doctrine is unaffected by an officer's use of a cover story to disguise a stop as a mere traffic stop"); United States v. Chavez, 534 F.3d 1338, 1348 (10th Cir. 2008). While the officers explained the need for the ruse, (see Tr. 33:8-

11

21), it is of no moment, because, looking at the totality of the circumstances, the FBI had probable cause. The court holds that the known facts and circumstances were sufficient to cause a man of reasonable prudence to believe defendant was a felon in possession of a firearm on November 4, 2014 when Agent Noyes and Trooper Clark worked together to pull over the vehicle in which defendant was a passenger.

     B.  Imputability of Probable Cause

Defendant also raises an objection to the magistrate judge's application of the collective knowledge doctrine to impute probable cause to the Highway Patrol officers. Defendant argues that the traffic stop by the Highway Patrol was unconstitutional, because Agent Noyes neither led, nor directed the officers conducting the stop and search. The collective knowledge doctrine, however, is not limited to cases where a superior officer commands another officer. Rather, the doctrine properly may be applied in cases where information is relayed between different law enforcement departments, even when the agency possessing probable cause does not presume the authority to formally "direct" another, separate agency. The key question for a reviewing court deciding whether to apply the collective knowledge doctrine is whether the officer with probable cause relayed the existence of his probable cause to the agency or officers that effected the seizure. See United States v. Pitt, 382 F.2d 322, 324 (4th Cir. 1967) ("It was enough that Agent Wurms reported to Agent Worden the substance of his telephone conversation with the informant."). No explicit direction from one officer to another is required, so long as probable cause is relayed. See id. at 323; Massenberg, 654 F.3d at 495.

Agent Noyes testified that he went to the Highway Patrol, talked about the information he had received from his informant, and asked for Trooper Clark's assistance in stopping defendant.

12

(Tr. 32:11-17) Together, Agent Noyes and Trooper Clark developed the plan to seize defendant under the guise of a traffic stop in order to protect the identity of the informant. (Tr. 33:1-11; 109:15-110:2). Agent Noyes and Trooper Clark further testified that they were in constant phone communication, and that the Highway Patrol at all times was aware of the existence of an informant and the substance of information relayed by said informant, including defendant's location, a description of the vehicle, defendant's convicted felon status and armed nature, a general description of the type of weapon, and the weapon's purported location within a bag or case. (Tr. 36:21 to 38:19; 110:10-18). Agent Noyes provided the Highway Patrol officers conducting the vehicle stop with the necessary information, and then allowed those officers ultimately to form the plan they believed to be in the best interest of the officers involved and Agent Noyes's informant. Trooper Clark rode with Trooper Lamm, and conveyed to him the information necessary for Trooper Lamm to assist Trooper Clark with the stop and seizure. (Tr. 110:8-13).

The officers involved in the seizure of defendant were aware of Agent Noyes's information, and were able to take this into consideration when acting to seize defendant. For these reasons, the court finds Agent Noyes's probable cause properly may be imputed to the Highway Patrol officers that conducted the stop of defendant. Defendant's motion to suppress, therefore, must be denied.

## CONCLUSION

Based on the foregoing reasons, upon de novo review of the portions of the M&R to which specific objections were raised, and considered review of those portions to which no such objections were made, the court ADOPTS the recommendation of the magistrate judge as set forth herein. Defendant's motion to suppress is DENIED. (DE 22). Arraignment and trial were continued in this case until no sooner than 45 days after disposition of the instant motion. In accordance with the

13

court's order entered February 17, 2015, the clerk is DIRECTED to set the matter for arraignment and trial at the court's next regular criminal term no sooner than 45 days from date of entry of this order.

SO ORDERED, this the 26th day of October, 2015.

_____
LOUISE W. FLANAGAN
United States District Judge